In the Matter of the Application of HERMAN GRAEF, Petitioner, for an Order of Mandamus against THE DEPARTMENT OF HEALTH OF THE CITY OF NEW YORK and Others, Respondents.

Supreme Court, New York County, January 31, 1928.

**Municipal corporations — city of New York — pensions — peremptory mandamus to compel commissioner of health to continue to pay petitioner's pension, granted pursuant to Greater New York charter, § 1323-a — statute gives no power to repeal or suspend pension after it has been granted, provided it was not illegally obtained.**

Petitioner, an employee of the health department of the city of New York for a period of more than twenty years, is entitled to a peremptory order of mandamus compelling the commissioner of health of said city to continue the payment of petitioner's pension, granted pursuant to the provisions of section 1323-a of the Greater New York charter, since the provisions of that statute give no power to repeal or suspend a pension after it has been granted, provided the pension itself was not fraudulently or illegally obtained.

APPLICATION for a peremptory order of mandamus.

*Herman Graef* [*Samuel S. Kogan* of counsel], for the petitioner.

*George P. Nicholson, Corporation Counsel,* for the respondents.

LEVY, J. Petitioner seeks a peremptory order of mandamus to compel payment to him from the pension fund of the health

department of the city of New York of certain moneys which have been withheld from him as a pension. As an employee of that department for a period of over twenty years, he became entitled to a pension pursuant to section 1323-a of the Greater New York charter, in the sum of $764, payable in quarter annual installments. Since January 1, 1927, the pension has been denied him because the health commissioner suspects him of certain questionable activities during his employment in the department, in behalf of certain poultry dealers.

The position the commissioner of health assumes is that because of public policy he has suspended the pension rights of the petitioner pending an investigation. In order to determine the commissioner's authority in this direction, it is necessary to consider the statutes which bear application. Section 1323-a of the Greater New York charter provides that " Any physician or employee who has or shall have performed duty as such physician or employee in any department of health in the city of New York, for a period of twenty years, or upward, upon his own application, in writing, * * * shall be retired from active service by resolution of the board of health of the health department of the city of New York, and placed upon the health department pension roll, and thereupon shall be awarded, granted and paid from said health department pension fund by the trustees thereof, an annual sum during his lifetime not exceeding one-half the ordinary full pay of a physician or employee in the health department service, of the rank of the physician or employee so retired. Pensions granted under this section shall be for the natural life of the person receiving the same, and shall not be revoked, repealed or diminished. * * *." From a reading of this provision it would seem to follow that there is no power to repeal or suspend the pension after it has been granted, provided, of course, that the pension itself has not been fraudulently or illegally obtained.

Respondents in the endeavor to support the position of the commissioner, cite instances of employees who may be removed from office, even though the obliquities which are the basis of such removal are not connected with the performance of the regular duties. (*People ex rel. Wood* v. *Department of Health,* 144 App. Div. 628; affd., 202 N. Y. 610; *People ex rel. Connolly* v. *Police Comrs.,* 11 Hun, 403.) These cases, however, bear no analogy. They reflect merely upon the fitness and propriety of an employee to continue in the employment. He certainly has no vested right in office except possibly on condition of continued good behavior; but pensions or retirement allowances may not be said to be granted upon the implied condition of the continued

fitness of the person thus retired. Such allowances are not in the nature of gratuities or voluntary payments which may be the subject of suspension at will. The very fact that the statute expressly prohibits the repeal of any retirement pension must be taken to indicate that it is in the nature of a fixed right which the retired employee secures. The reasons for regarding such an allowance as fixed and positive are not difficult to discern. For example, it may well be that in contemplation of entering public service of this character, the employee considers the outlook of the anticipated pension after proper service as one of the inducements to enter and to persuade him to continue, declining perhaps more attractive offers from other sources which might be afforded. Moreover, section 1320 of the charter provides for a contribution by the very employee in the form of a percentage of his pay or salary into the pension fund from which ultimately pension payments are made, so that, in a sense, the pension is an annuity purchased, to some extent at least, with the pensioner's own funds. It would follow, therefore, from a reading of section 1323-a that petitioner's pension was cut off without any warrant of law.

However, section 1324 of the charter may, in certain instances, countenance a suspension or cessation of a pension granted. This section in part provides: " The board of health may, in its discretion, order any pension granted or any part thereof to cease, *except as provided in the last preceding section,* but in all such cases the said board of health, shall file with the board of trustees of the health department pension fund, a written statement of the causes determining the action of the said board of health in ordering any pension to so cease; * * *." Obviously, the italicized words would appear to indicate that even if the board of health had formally and officially acted, no employee retired under the provisions of section 1323-a of the charter could be denied his pension grant.

The question then occurs as to the significance of section 1324 and to what classes of pensions it has reference. This, it seems to me, may be found very easily by noting section 1322 which grants allowances to dependents of employees who have died of disease or injury contracted while in the performance of duties. In any event, reading section 1325, which requires that the provisions of the statute be construed liberally in order " to secure the beneficial interests," it must be concluded that in the premises respondents are without power to order the suspension or discontinuance of the petitioner's pension, and irrespective of how well intentioned the commissioner of health may be, the peremptory order of mandamus must be granted. Settle order.